******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

COREY TURNER *v.* STATE OF CONNECTICUT
(AC 37285)

DiPentima, C. J., and Prescott and Mullins, Js.

*Argued December 12, 2016—officially released April 18, 2017*

(Appeal from Superior Court, judicial district of
Hartford, Mullarkey, J.)

*Corey Turner*, self-represented, the appellant (peti-
tioner).

*Sarah Hanna*, assistant state's attorney, with whom,
on the brief, were *Gail P. Hardy*, state's attorney, and
*Jo Anne Sulik*, supervisory assistant state's attorney,
for the appellee (respondent).

*Opinion*

PRESCOTT, J. The petitioner, Corey Turner, appeals from the judgment of the trial court denying on statute of limitations grounds his petition for a new trial filed pursuant to General Statutes § 52-270.[1] The petitioner concedes that he filed his petition outside of the three year limitations period set forth in General Statutes § 52-582.[2] Instead, he claims that the trial court improperly failed to exercise its equitable power to toll the statute of limitations, thereby unfairly denying him access to a remedy. We conclude that the petitioner's failure to comply with § 52-582 deprived the court of jurisdiction to consider the petition. Because the court should have dismissed the untimely petition, rather than having denied it, we reverse the judgment of the trial court only as to the form of the judgment and remand with direction to dismiss the petition for new trial.

The record reveals the following relevant facts and procedural history. In 1997, the petitioner was found guilty of murder in violation of General Statutes § 53a-54a and assault in the first degree in violation of General Statutes § 53a-59, for which he received a total effective sentence of sixty years of incarceration. *Turner* v. *Commissioner of Correction*, 97 Conn. App. 15, 15, 902 A.2d 716 (2006). Our Supreme Court affirmed the judgment of conviction on direct appeal.[3] *State* v. *Turner*, 252 Conn. 714, 751 A.2d 372 (2000). Thereafter, the petitioner filed a number of unsuccessful actions in state and federal court, including multiple petitions seeking a writ of habeas corpus, a petition for a writ of error coram nobis, and a motion to open and set aside the judgment of conviction. See *Turner* v. *Dzurenda*, 596 F. Supp. 2d 525 (D. Conn. 2009), aff'd, 381 Fed. Appx. 41 (2d Cir.), cert. denied, 562 U.S. 1032, 131 S. Ct. 574, 178 L. Ed. 2d 419 (2010); *Turner* v. *Commissioner of Correction*, 163 Conn. App. 556, 134 A.3d 1253, cert. denied, 323 Conn. 909, 149 A.3d 980 (2016); *State* v. *Turner*, 139 Conn. App. 906, 55 A.3d 626 (2012), cert. denied, 308 Conn. 946, 67 A.3d 289 (2013); *Turner* v. *State*, 134 Conn. App. 906, 40 A.3d 345, cert. denied, 307 Conn. 904, 53 A.3d 219 (2012); *Turner* v. *Commissioner of Correction*, 118 Conn. App. 565, 984 A.2d 793 (2009), cert. denied, 296 Conn. 901, 991 A.2d 1104 (2010); *Turner* v. *Commissioner of Correction*, supra, 97 Conn. App. 15; *Turner* v. *Commissioner of Correction*, 86 Conn. App. 341, 861 A.2d 522 (2004), cert. denied, 272 Conn. 914, 866 A.2d 1286 (2005).

On December 7, 2012, the self-represented petitioner filed the underlying petition for a new trial pursuant to § 52-270. On December 30, 2013, the petitioner amended his petition. The amended petition asserted that the state had engaged in "sham negotiations or a false promise of compromise" that was "intended to induce the petitioner to surrender his right to a hearing on his motion to suppress the in and out of court identification

of the petitioner as the perpetrator . . . ." The petitioner also alleged that the state had solicited and offered "perjured, false or misleading testimony" from its principal identification witness and that, but for those actions, he would have prevailed on his motion to suppress, and the results of his criminal trial would have been different, including a possible dismissal of all charges.

The respondent, the State of Connecticut, answered the petition for new trial, asserting by special defense that the petitioner was not entitled to relief because the petition had been filed more than three years after judgment was rendered and, thus, was barred by § 52-582 (a), the applicable statute of limitations. In response, the petitioner asserted that although the governing statute of limitations admittedly had expired, the court was not bound to apply the statute of limitations, and could exercise its equitable powers to consider and ultimately grant his petition.

The court held a hearing on the petition for new trial on January 8, 2014. At that time, the court, *Mullarkey, J.*, indicated to the parties that it was concerned that it lacked jurisdiction to entertain an untimely petition. The respondent took the position that the petitioner's failure to file his petition within the applicable limitations period did not implicate the court's jurisdiction, but only provided the respondent with an affirmative defense, which it had pleaded. The court indicated that it would need to decide the jurisdictional issue first.[4] The court nevertheless proceeded to hear evidence on the merits of the petition.[5]

The parties later submitted posttrial briefs. The petitioner's posttrial brief addressed the court's jurisdictional concern in a footnote, in which he again acknowledged that the governing statute of limitations set forth in § 52-582 (a) had expired prior to his filing the petition, but argued that the court nevertheless had jurisdiction to consider its merits. According to the petitioner, "[i]n an equitable proceeding, a court may provide a remedy even though the governing statute of limitations has expired, just as it has discretion to dismiss for laches an action initiated within the period of the statute. *Dunham* v. *Dunham*, 204 Conn. 303, 326–27, [528 A.2d 1123] (1987)." In its posttrial brief, the respondent maintained its position that the petition was time barred, and argued that the petitioner had failed to establish that the limitations period should be tolled.[6]

On August 14, 2014, the court rendered a judgment denying the petition for new trial on statute of limitations grounds. The court determined that, for purposes of § 52-582, "the rendition of the judgment" had occurred on October 10, 1997, when the petitioner was sentenced in the underlying criminal matter. See *Holliday* v. *State*, 111 Conn. App. 656, 663, 960 A.2d 1101 (2008), cert. denied, 291 Conn. 902, 967 A.2d 112 (2009).

The court also found that the petitioner did not file his petition for new trial until August, 2012, nearly fifteen years after sentencing and, thus, well beyond the three year limitations period.

Rather than disposing of the petition for new trial solely on the basis of the uncontested fact that the petitioner had not filed it within the three year statute of limitations, the trial court indicated as part of its rationale for denying the petition that the petitioner had failed to provide the court with any explanation that would have justified a late petition. The court stated that even if it had equitable authority to consider a late petition, it lacked any evidentiary basis to do so in this case. The court suggested that it was the petitioner's burden to show that some injustice had prevented the petitioner from filing the petition before the statute of limitations had run. The court concluded that, taking into account the nature of the petitioner's claim, it could find "nothing that would have prevented the petitioner from pursuing it within the limitation period." As previously noted, the court explicitly stated that the petitioner was "not alleging fraudulent concealment, or any other impropriety, that would have caused him any delay in raising the claim." The court denied the petition for new trial and, subsequently, granted the petitioner certification to file an appeal in accordance with General Statutes § 54-95 (a).[7] This appeal followed.

The petitioner's sole claim on appeal is that the court abused its discretion in determining that his petition for new trial was barred by the relevant statute of limitations, arguing that, in the interest of justice, a trial court in equitable proceedings is not obligated to adhere to a statute of limitations. Inherent in the petitioner's claim is a presumption that the limitations period set forth in § 52-582 was not jurisdictional in nature and that the court had the authority to consider and apply principles of equitable tolling.[8] The respondent counters that the trial court lacked any discretion regarding whether to apply the statute of limitations and argues in the alternative that, even if it had such discretion, it properly declined to exercise it in this case. We agree with the respondent that the trial court lacked discretion to consider a petition that was filed outside the limitations period.

Our Supreme Court has made clear that a court lacks the authority to apply the doctrine of equitable tolling or otherwise exercise discretionary authority to extend a limitations period if the applicable statute of limitations constitutes a limit on the court's subject matter jurisdiction. *Williams* v. *Commission on Human Rights & Opportunities*, 257 Conn. 258, 269, 777 A.2d 645 (2001). No appellate court explicitly has determined whether a failure to comply with the three year limitations period in § 52-582 may be excused or whether strict compliance with the limitations period is neces-

sary to invoke the court's subject matter jurisdiction.[9] If the limitations period in § 52-582 was intended by the legislature as an outright limit on the court's jurisdiction to entertain a late petition for new trial, the petitioner's admission that he failed to comply with the statutory time requirement would be determinative of his appellate claim because, in such a situation, the trial court would have lacked *any* discretion to consider the merits of the petition. Because the respondent has advanced this argument on appeal, we must address it before we can turn to the petitioner's abuse of discretion claim. See *Pine* v. *Dept. of Public Health*, 100 Conn. App. 175, 180–81, 917 A.2d 590 (2007); see also *State* v. *Delgado*, 323 Conn. 801, 810, 151 A.3d 345 (2016) (questions of subject matter jurisdiction "may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal" [internal quotation marks omitted]). For the reasons that follow, we conclude that the three year limitations period for filing a petition for new trial in a criminal matter implicates the court's subject matter jurisdiction, and, therefore, the court lacked any discretion to consider the untimely petition.

Whether the court had subject matter jurisdiction to consider a late petition for new trial presents a question of law over which our review is plenary. *Allen* v. *Commissioner of Revenue Services*, 324 Conn. 292, 298, 152 A.3d 488 (2016). In *Williams* v. *Commission on Human Rights & Opportunities*, supra, 257 Conn. 266, our Supreme Court sought to "clarify the analysis for deciding whether a time limit is subject matter jurisdictional." It explained that "[a] conclusion that a time limit is subject matter jurisdictional has very serious and final consequences. It means that, except in very rare circumstances . . . a subject matter jurisdictional defect may not be waived . . . may be raised at any time, even on appeal . . . and that subject matter jurisdiction, if lacking, may not be conferred by the parties, explicitly or implicitly. . . . Therefore, we have stated many times that there is a presumption in favor of subject matter jurisdiction, and we require a strong showing of legislative intent that such a time limit is jurisdictional." (Citations omitted.) Id. The court held that the proper analytical approach is to focus on "whether the legislature intended the time limitation to be subject matter jurisdictional." Id., 267; see id., 269–70. A search for legislative intent is a hallmark of statutory construction. Thus, whether the three year limitations period set forth in § 52-582 implicates the trial court's subject matter jurisdiction is a question of statutory interpretation.

When construing a statute, "[o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case,

including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . .'' (Internal quotation marks omitted.) *Kasica* v. *Columbia*, 309 Conn. 85, 93, 70 A.3d 1 (2013).

Looking to the text of § 52-582, the statute provides in relevant part that ''[n]o petition for a new trial in any civil or criminal proceeding shall be brought but within three years next after the rendition of the judgment or decree complained of . . . .''[10] Accordingly, the relevant statutory language provides that, following the ''rendition of the judgment,'' which, in a criminal case, is indisputably the sentencing date; see *State* v. *Bruno*, 132 Conn. App. 172, 177 n.3, 30 A.3d 34 (2011), cert. denied, 303 Conn. 919, 34 A.3d 393 (2012); the petition ''shall be brought'' within three years.

''Definitive words, such as must or shall, ordinarily express legislative mandates of nondirectory nature. . . . [T]he word shall creates a mandatory duty when it is juxtaposed with [a] substantive action verb.'' (Citation omitted; internal quotation marks omitted.) *Wiseman* v. *Armstrong*, 295 Conn. 94, 101, 989 A.2d 1027 (2010). The use of the language ''shall be brought'' in § 52-582 is clearly mandatory in nature. Although the statute contains no explicit language explaining what should happen if a party files a petition outside the limitations period, our Supreme Court has indicated the absence of such language does not render a statute ambiguous; *State* v. *Ramos*, 306 Conn. 125, 136–37, 49 A.3d 197 (2012); nor is its absence indicative that the time limit is not jurisdictional in nature. Id., 140. Although a statute's mandatory language alone will not always suffice to overcome the general presumption of jurisdiction; see *Williams* v. *Commission on Human Rights & Opportunities*, supra, 257 Conn. 269–70; and, thus, may not be fully dispositive of legislative intent, it nevertheless serves as a strong indication that the legislature intended the three year period to serve as ''an unequivocal bar to filing beyond the prescribed period . . . .'' *State* v. *Ramos*, supra, 306 Conn. 139 n.11; see also *Williams* v. *Commission on Human Rights & Opportunities*, supra, 257 Conn. 271 (acknowledging that ''strong mandatory language . . . is consistent with the notion of a subject matter jurisdic-

tional limit").

With respect to interpreting the language of § 52-582, we do not write on a clean slate regarding whether the legislature intended to create a jurisdictional bar. In *State* v. *Ramos*, supra, 306 Conn. 127–28, the issue before our Supreme Court was whether the three year period provided in General Statutes § 54-1j for filing a motion to vacate a criminal conviction on the ground that the defendant was not apprised of the immigration consequences of a plea was jurisdictional in nature. The court, albeit in dicta, referenced § 52-582 and the language used by the legislature as a clear example of a statute of limitations in which the legislature intended to enact a jurisdictional bar. Id., 139 n.11.

Furthermore, as our Supreme Court also indicated in *Ramos*, the legislature "amply has demonstrated that it knows how to provide good cause exceptions to time limitations if it so intends." Id., 139 n.11, and statutes cited therein. No general good cause exception was included by the legislature when it enacted § 52-582. Significantly, the legislature later amended the statute to expressly allow the court to consider petitions for new trial based on newly discovered evidence filed outside the three year period but only if the newly discovered evidence involved DNA. See footnote 10 of this opinion. Presumably, such an amendment would have been unnecessary if a court already possessed the discretion to consider a late petition. "It is a basic tenet of statutory construction that the legislature [does] not intend to enact meaningless provisions." (Internal quotation marks omitted.) *Neighborhood Assn., Inc.* v. *Limberger*, 321 Conn. 29, 38–39, 136 A.3d 581 (2016). If the legislature had wanted to leave open the possibility that a petition filed outside the three year period could be entertained by the court for equitable reasons, it easily could have done so with express language. Overall, we are convinced that the unambiguous and unqualified language used by the legislature in § 52-582 evinces that a petition must be filed within the stated three year limitations period, otherwise the court lacks jurisdiction to consider it.

Next, in addition to analyzing the statutory language contained in § 52-582, we must take into consideration the entire statutory scheme at issue, and more particularly construe § 52-582 together with § 52-270. Because a petition for new trial under § 52-270 is a statutorily created proceeding, its scope necessarily is limited by the terms of the statutory scheme governing its use. See *Black* v. *Universal C. I. T. Credit Corp.*, 150 Conn. 188, 192, 187 A.2d 243 (1962); see also *Waterworks* v. *Audet*, 29 Conn. App. 722, 723–24, 617 A.2d 932 (1992) (holding failure to comply with statutory requirement that petition for new trial in civil matter be served by writ and complaint deprived court of subject matter jurisdiction to consider petition). Our Supreme Court

has stated in the context of a civil matter that "[a] critical limitation on the exercise of the trial court's discretion in passing upon such a petition for a new trial . . . is the statute of limitations." *Summerville* v. *Warden*, 229 Conn. 397, 426, 641 A.2d 1356 (1994). It is unclear, however, whether our Supreme Court's use of the phrase "critical limitation" on the "court's discretion" in describing the statute of limitations was meant to convey that a late petition for new trial should be treated as jurisdictionally barred or merely that the court should give important consideration to the timeliness of a petition before considering its merits.

The notion that the limitation period is intended as a jurisdictional bar is certainly more compelling in a criminal law context. *State* v. *Ramos*, supra, 306 Conn. 134–35. Despite the generally recognized principle that there is always a strong presumption in favor of jurisdiction; see *Williams* v. *Commission on Human Rights & Opportunities*, supra, 257 Conn. 266; "in criminal cases, this principle is considered in light of the common-law rule that, once a defendant's sentence has begun . . . th[e] court may no longer take any action affecting a defendant's sentence unless it expressly has been authorized to act." (Internal quotation marks omitted.) *State* v. *Ramos*, supra, 134–35.

"It is well established that under the common law a trial court has the discretionary power to modify or vacate a criminal judgment before the sentence has been executed. . . . This is so because the court loses jurisdiction over the case when the defendant is committed to the custody of the commissioner of correction and begins serving the sentence . . . . There are a limited number of circumstances in which the legislature has conferred on the trial courts continuing jurisdiction to act on their judgments after the commencement of sentence. . . . See, e.g., General Statutes §§ 53a-29 through 53a-34 (permitting trial court to modify terms of probation after sentence is imposed); General Statutes § 52-270 (granting jurisdiction to trial court to hear petition for a new trial after execution of original sentence has commenced); General Statutes § 53a-39 (allowing trial court to modify sentences of less than three years provided hearing is held and good cause shown). . . . Without a legislative or constitutional grant of continuing jurisdiction, however, the trial court lacks jurisdiction to modify its judgment." (Citations omitted; internal quotation marks omitted.) *State* v. *Lawrence*, 281 Conn. 147, 153–54, 913 A.2d 428 (2007).

A petition for new trial pursuant to § 52-270 is in clear derogation of the common law because it grants the trial court continuing jurisdiction over criminal matters following sentencing. Any statutory limitation on the filing of a petition for new trial should be strictly construed in favor of limiting the scope of its use, which in this case militates in favor of construing the three

year limitations period in § 52-582 as a strict jurisdictional bar. Such a construction is supported by our Supreme Court's recent holding in *Allen* v. *Commissioner of Revenue Services*, supra, 324 Conn. 297–303. In *Allen*, the court held that the three year limitations period to file an income tax refund pursuant to General Statutes § 12-732 (a) was jurisdictional and could not be tolled because it was part of a statutory scheme that waived sovereign immunity in derogation of common law. Id.

In support of his claim that the trial court had equitable authority to look past the petitioner's failure to comply with the statutorily proscribed time limit, the petitioner relies, as it did before the trial court, on a passage from *Dunham* v. *Dunham*, supra, 204 Conn. 326–27. That reliance, however, is misplaced.

In *Dunham*, the trial court had directed a verdict in favor of the plaintiff in an action that included a count seeking to set aside a probate decree on the basis of allegations that the defendant had exercised undue influence in preparing and securing the execution of a will. Id., 308. The defendant claimed on appeal, inter alia, that the count seeking relief from the probate decree, an equitable action, nevertheless was barred by the three year statute of limitation for actions sounding in tort. Id., 326. The Supreme Court stated that "[t]he fallacy in the defendant's argument is his assumption that a court, acting under its equitable powers, is bound to apply the statute of limitations that governs the underlying cause of action. In fact, in an equitable proceeding, a court may provide a remedy even though the governing statute of limitations has expired, just as it has discretion to dismiss for laches an action initiated within the period of the statute. . . . Although courts in equitable proceedings often look by analogy to the statute of limitations to determine whether, in the interests of justice, a particular action should be heard, they are by no means obligated to adhere to those time limitations." (Citations omitted.) Id., 326–27.

Although the petitioner finds support for his position in the court's statement that "in an equitable proceeding, a court may provide a remedy even though the governing statute of limitations has expired"; id., 326; the petitioner has failed to appreciate the context in which that statement was made. Unlike the present case, the court in *Dunham* was not considering whether to follow a statute of limitations that was directly applicable to the equitable proceeding before it, but whether it should import and adhere to an analogous statute of limitations applicable to a related action at law. Thus, the previously quoted language merely recognizes the discretion of the trial court in equitable proceedings not directly governed by a limitations period to import and apply an analogous statute of limitations. Although we have described a petition for new trial as "a proceed-

ing essentially equitable *in nature*"; (emphasis added; internal quotation marks omitted) *Savalle* v. *Hilzinger*, 158 Conn. App. 837, 844, 120 A.3d 520, cert. denied, 319 Conn. 946, 125 A.3d 527 (2015); it is a statutorily created proceeding, not an action at equity, and it is governed by a directly applicable statute of limitations. The court had no discretion but to apply the statute of limitations. *Dunham* is simply inapposite to our analysis.

Finally, in the past, appellate courts considering whether a limitations period was jurisdictional in nature and, thus, could be raised sua sponte by the court, looked to whether the statute containing the limitations period was the same statute that created the cause of action for which the limitations period was intended to apply. "The general rule is that where the right of action exists independently of the statute in which the limitation is found, such a statutory bar is considered personal and procedural, and it is deemed waived unless it is specially pleaded. . . . This is so because it is considered that the limitation acts as a bar to a remedy otherwise available. . . . In these instances, a trial court may not raise the limitation on its own motion. [If], however, a specific limitation is contained in the statute which establishes the remedy, the remedy exists only during the prescribed period and not thereafter. In this situation, the court may properly raise the statute of limitations issue on its own motion because it is considered substantive or jurisdictional, and not subject to waiver." (Citations omitted.) *Orticelli* v. *Powers*, 197 Conn. 9, 15, 495 A.2d 1023 (1985).

Although, in the present case, the limitations period for a petition for new trial is not contained in § 52-270, the statute creating that right of action, we are unconvinced that this is a decisive factor in deciding the issue before us. Whether the statute creating the cause of action also contains the limitation period is but one factor to be considered in divining the legislative intent. Our Supreme Court recently has suggested that in ascertaining whether the legislature intended a limitation period to be jurisdictional, it is more instructive to observe whether the limitation period is a condition imposed on a statutorily created right of action or, conversely, an action that existed under the common law. "The former generally is deemed to be jurisdictional, whereas the latter is not." *Neighborhood Assn., Inc.* v. *Limberger*, supra, 321 Conn. 46. Here, the limitation period is a condition precedent to filing a petition for new trial, a statutorily created action. Although that limitation period is not contained in the statute creating the right of action, that factor is simply insufficient to sway our overall analysis.

Having considered the text of the statute itself and its relationship to other statutes, we are convinced that the legislature intended the three year limitations period set forth in § 52-582 to be a jurisdictional bar. The peti-

tioner concedes that the underlying petition was filed more than three years after he was sentenced in the underlying criminal action. Because the petition was not timely, and the statutory exception for newly discovered DNA evidence was inapplicable, the court was without subject matter jurisdiction to consider the merits of the petition.

Having determined that the court lacked subject matter jurisdiction to consider the petition for new trial, we conclude that the court should have dismissed rather than denied the petition. See *State* v. *Tabone*, 301 Conn. 708, 715, 23 A.3d 689 (2011).

The form of the judgment is improper, the judgment denying the petition for new trial is reversed, and the case is remanded with direction to render judgment dismissing the petition for new trial.

In this opinion the other judges concurred.

[1] General Statutes § 52-270 (a) provides: "The Superior Court may grant a new trial of any action that may come before it, for mispleading, the discovery of new evidence or want of actual notice of the action to any defendant or of a reasonable opportunity to appear and defend, when a just defense in whole or part existed, or the want of actual notice to any plaintiff of the entry of a nonsuit for failure to appear at trial or dismissal for failure to prosecute with reasonable diligence, *or for other reasonable cause*, according to the usual rules in such cases. The judges of the Superior Court may in addition provide by rule for the granting of new trials upon prompt request in cases where the parties or their counsel have not adequately protected their rights during the original trial of an action." (Emphasis added.)

[2] General Statutes § 52-582 provides in relevant part: "No petition for a new trial in any civil or criminal proceeding shall be brought but within three years next after the rendition of the judgment or decree complained of . . . ."

[3] In its opinion, our Supreme Court set forth the following facts underlying the petitioner's criminal conviction. "On the evening of August 11, 1995, [the petitioner] and Richard Woods, the victim, had an argument in front of Betty Lewis' house at 141 Homestead Avenue in Hartford. At approximately 11 p.m. that night, Darius Powell, Kendrick Hampton, Lewis and Woods were together in front of Lewis' house. Blanchard Baisden, also known as 'Weedy,' Armando Colon, also known as 'Mondo,' and Lillian Williams also were standing nearby at that time. [The petitioner] and [his brother] Charles Turner drove down the street in a tan Oldsmobile. Shortly thereafter, Charles Turner, now alone in the car, drove back up Homestead Avenue. Charles Turner parked the car at the corner of Homestead Avenue and Edgewood Street, across the street from where Woods and his friends were standing. He then exited the car and began 'dancing around.' As Powell, Hampton and Woods watched Charles Turner, [the petitioner], wearing a mask and dark clothing, approached the group and shot at Woods with a handgun. The first two shots hit Woods in the leg, and three of the following six shots struck him in the hip. During the attack, Woods shouted 'Boku shot me. Boku did it.' 'Boku' is [the petitioner's] street name. Powell and Hampton, who were familiar with [the petitioner] from the neighborhood, recognized him as the assailant. After the shooting, [the petitioner] escaped through the yards behind the apartment building. Charles Turner, who had jumped back into the tan Oldsmobile when the shooting began, drove down Homestead Avenue and picked up [the petitioner] four houses away. Woods later died at the hospital from the gunshot wounds." *State* v. *Turner*, 252 Conn. 714, 717–18, 751 A.2d 372 (2000).

[4] The relevant colloquy was as follows:

"The Court: Now, do we have any other motions from the state as far as the court's jurisdiction in this matter?

"[The Respondent]: No, Your Honor. I just felt there would be too little time before today to file a motion for summary judgment and then allow the petitioner to have enough time to respond before today, so I didn't file a motion.

"The Court: Well, in addition to this, I have another petition for a new trial, and I have sort of supervisory responsibility on petitions generally pending in the criminal courthouse. So other than my day job, I have a concern as to whether or not this court has jurisdiction.

"[The Petitioner]: Well—

"[The Respondent]: I believe the court has jurisdiction. We're alleging that there is—that because he was convicted and sentenced in 1997, we're three years beyond the statute—we're beyond the three year statute of limitations. I don't think that's a jurisdictional question. I think it's an affirmative defense.

"The Court: All right. Well, are you going to file a motion on that?

"[The Respondent]: We've pleaded it in our answer.

"The Court: Well, that's the first thing we have to decide, Mr. Turner.

"[The Petitioner]: This is correct. I filed it on—excuse me. I filed a response to the state's special defense, Your Honor."

[5] The petitioner submitted transcripts and other documentary evidence, and presented testimony from his criminal trial counsel, who was the only witness offered by the petitioner. The respondent called no witnesses of its own and presented no other evidence.

[6] The respondent's discussion focused primarily on the petitioner's failure to establish that the state had fraudulently concealed the alleged facts that served as a basis for the petition for new trial. Our fraudulent concealment statute, General Statutes § 52-595, provides: "If any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence." As the petitioner correctly noted in his posttrial reply brief, he never asserted that the court had discretion to hear his untimely petition as a result of fraudulent concealment by the state. The court acknowledged this in its memorandum denying the petition. Accordingly, we do not consider the applicability of § 52-595.

We note that in *Holliday* v. *State*, 111 Conn. App. 656, 960 A.2d 1101 (2008), cert. denied, 291 Conn. 902, 967 A.2d 112 (2009), this court rejected on its merits a claim that the three year statute of limitations for filing a petition for new trial had been tolled by fraudulent concealment. The panel in *Holliday*, however, was not asked to consider whether the limitations period in § 52-582 was jurisdictional in nature, nor did they raise that issue sua sponte, and, therefore, the court did not discuss whether such a determination would have had any bearing on the applicability of § 52-595. We leave that question for another day when the issue is squarely before us. But see *Fichera* v. *Mine Hill Corp.*, 207 Conn. 204, 216–17, 541 A.2d 472 (1988) (holding § 52-595 inapplicable to toll jurisdictional CUTPA limitations period in General Statutes § 42-110g [f]).

[7] General Statutes § 54-95 (a) provides in relevant part: "No appeal may be taken from a judgment denying a petition for a new trial unless, within ten days after the judgment is rendered, the judge who heard the case or a judge of the Supreme Court or the Appellate Court, as the case may be, certifies that a question is involved in the decision which ought to be reviewed by the Supreme Court or by the Appellate Court. . . ."

[8] We previously have construed "equitable tolling" as a doctrine that includes notions of "waiver, consent, or estoppel, that is, as an equitable principle to excuse untimeliness." *Williams* v. *Commission on Human Rights & Opportunities*, 67 Conn. App. 316, 320 n.9, 786 A.2d 1283 (2001).

[9] The issue of whether the time limitation in § 52-582 was a substantive or procedural matter so as to affect the court's jurisdiction was an issue before this court in *Labow* v. *Labow*, 69 Conn. App. 760, 764–65, 796 A.2d 592, cert. denied, 261 Conn. 903, 802 A.2d 853 (2002), in which the trial court had dismissed sua sponte an untimely petition for new trial on the ground that it lacked jurisdiction to consider a late petition. We did not reach the issue, however, because we determined that an underlying final judgment was a prerequisite to the filing of a petition for new trial, and, because no such judgment had been rendered prior to the filing of the petition for new trial in that case, the trial court's dismissal of the petition was proper, albeit on a different ground. Id., 766.

[10] In 2000, the legislature amended § 52-582 by appending to the existing language the following exception: "except that a petition based on DNA (deoxyribonucleic acid) evidence that was not discoverable or available at the time of the original trial may be brought at any time after the discovery or availability of such new evidence." Public Acts 2000, No. 00-80, § 2. That exception does not apply in the present case because the petitioner's claim

does not involve newly discovered DNA evidence.

_____